In re THREE MINOR CHILDREN

High Court of American Samoa
Trial Division

JUV No. 83-87
JUV No. 13-88
JUV No. 14-88

February 21, 1989

Before REES, Associate Justice, AFUOLA, Associate Judge, and VAIVAO, Associate Judge.

Counsel: For Petitioners, Robert A. Porter

These three actions seek the termination of parental rights. At the request of counsel, all three cases were set for trial and were heard on February 15, 1989. As became clear during the respective hearings, none of the cases was ready to be heard. This is because counsel made no serious attempt to notify the natural parents whose rights he proposes to terminate.

In all three cases the natural parents are believed to reside in Western Samoa and the only service attempted on them was by publication. The American Samoa statute dealing with service by publication requires that three things be done in order to effect such service: publication in a newspaper, posting in front of the court house, and mailing by registered mail to the defendant at his last known address. A.S.C.A. § 43.0502(a). The statute requires all three of these elements, not just one of them. The attempt to reach the defendant by mail is by far the most important of the three requirements, since it usually offers the likeliest prospect of actual notice to the defendant. Yet no such attempt was made in any of these cases.

The failure of counsel to notify the natural parents by mail at their last known addresses would make any attempted termination of their parental rights null and void, since the Court has not

obtained jurisdiction over them.[1] Even if we did have jurisdiction, however, we would be most reluctant to terminate the rights of natural parents without assuring ourselves that they genuinely understand and consent to such termination, or that termination is in the best interest of the children notwithstanding a lack of parental understanding or consent.

A legal termination of parental rights has important and irrevocable legal consequences for the child and for the parent. These consequences are often quite different from those of the informal adoption which has long been common in Samoa and with which all Samoans are presumably familiar. The most important difference is that a child whose legal relationship with his natural parents has been severed can never return to them --- as children who have been subject to fa`a Samoa adoption quite commonly do --- except by order of the government or the adoptive parents. Samoan parents who give their children to another family to raise, or who sign a "waiver" prepared by counsel for the prospective adopting parents, cannot be conclusively presumed to understand and agree to the consequences of a legal termination of parental rights.

Except where it is genuinely impossible to locate the natural parents, or where bringing them

---

[1] The Court may in certain circumstances obtain jurisdiction over absent parties by means other than service by publication. Counsel may apply for leave of Court to effect personal service on a party outside the Territory. A.S.C.A. § 43.0504; T.C.R.C.P. Rule 4(e). Or if the defendant actually receives notice by mail and signs a registered return receipt, the remaining elements of service by publication may be dispensed with. A.S.C.A. § 43.0504. In actions for the termination of parental rights service on an absent defendant may be by publication "or by any other means authorized by the Court." A.S.C.A. § 43.0318. In this case no means other than notice by publication was requested by counsel. In any case the Court would not approve any method not genuinely calculated to effect actual notice. See Memorandum of the Justices, 3 A.S.R. 33 (1986).

to American Samoa would occasion extraordinary hardship, they should be interviewed and counseled by the Child Protective Services division of the territorial Department of Human Resources. After reading the report prepared by the Child Protective Services, the Court can decide whether it will be necessary for the natural parents to testify at the hearing.

In each of these cases counsel signed an affidavit to the effect that the natural parents could not be located despite diligent efforts. At the hearings, however, it appeared that no such efforts were made.

In cases No. 13-88 and 14-88 the natural father is the brother of one of the petitioners. She testified that she has been out of touch with him for years and has no idea how to contact him; yet in May of 1988 he told the Child Protective Services that he was living with the petitioners in American Samoa. It also appeared at the hearing that petitioners did know how to contact the natural mother, who is divorced from the father of the children, but had not attempted to contact her for several years. The Court cannot proceed further without the testimony of both natural parents. We will, however, place the children in the temporary legal custody of the petitioners for the sole purpose of allowing them to attend school in American Samoa.

In case No. 83-87 one of the petitioners testified that she is related to the natural mother, knows where she lives in Western Samoa, but has not attempted to contact her since filing this action. The natural mother should be notified of this action by extraterritorial personal service or by registered or certified mail. Petitioners should attempt to arrange for her to be interviewed by the Child Protective Services and should also attempt to learn from her the identity of the natural father. After receiving the Child Protective Services report the Court will determine whether it can proceed further in this action without the testimony of one or both of the natural parents.

It is so ordered.